# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 118

APRIL TERM, A.D. 2015

September 3, 2015

ZACHARIA LEE JOHNSON,

Appellant
(Defendant),

v.

S-14-0262

THE STATE OF WYOMING,

Appellee
(Petitioner).

### Appeal from the District Court of Natrona County
The Honorable Daniel L. Forgey, Judge

*Representing Appellant:*
> Office of the Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; and Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.

### Before BURKE, C.J., and HILL, KITE*, DAVIS, and FOX, JJ.

*\* Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015) she was reassigned to act on this matter on August 4, 2015.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]    A jury found Zacharia Lee Johnson guilty of attempted first degree murder, aggravated burglary, conspiracy to commit aggravated burglary and aggravated assault. Mr. Johnson appeals, claiming the district court erred in incorrectly instructing the jury on the meaning of malice and denying his motion for judgment of acquittal on the conspiracy charge. We conclude the jury was improperly instructed but Mr. Johnson was not prejudiced thereby. We, therefore, affirm.

## ISSUES

[¶2]  The issues for our consideration are:

      1.     Whether the district court incorrectly instructed the jury on the definition of malice.

      2.     Whether sufficient evidence was presented to sustain the conspiracy conviction.

## FACTS

[¶3]  On March 4, 2013, the Casper Police Department received a 911 call from a man who said he had been stabbed multiple times at his apartment in Casper, Wyoming. When officers arrived at the scene, they found Robert Masterson covered in blood. Emergency personnel transported Mr. Masterson to the Wyoming Medical Center where they found stab wounds to the upper right and left sides of his torso, his neck, his left leg, and his stomach. He had a collapsed lung and perforated stomach as a result of the stab wounds to his torso.

[¶4]  Detective John Hatcher interviewed Pamela Nemetz, who lived in the apartment across the hall from Mr. Masterson. She reported that on the evening Mr. Masterson was stabbed, two white males had knocked on her door and asked for "Robert." She said she directed them to Mr. Masterson's apartment, they knocked on his door and he let them in.

[¶5]  Police officers obtained a warrant to search both Mr. Masterson's and Ms. Nemetz's apartments. They found a Carhart type coat containing a wallet and a red handkerchief in Ms. Nemetz's apartment. Inside the wallet, they found an identification card for Robert Chad Simmons. Apparently not realizing the items were connected to the stabbing, the officers left the coat and its contents in Ms. Nemetz's apartment. The next day, Ms. Nemetz's son brought the coat, wallet and handkerchief to the police department, thinking they might be connected with the stabbing. Police interviewed Ms. Nemetz a second time and she said the two men had been in her apartment before going to Mr. Masterson's. She provided a description of both of the men and identified the second man, Mr. Simmons, from a photo lineup. She stated he had left the coat in her apartment.

1

[¶6] On March 6, 2013, police learned that Mr. Simmons had driven his vehicle into the North Platte River near Casper. Fire personnel reported that Mr. Simmons had said he drove into the river in an attempt to "atone for his sins for stabbing a guy the other night." Mr. Simmons told police he knew Ms. Nemetz, had left his coat in her apartment, was in the building where the victim's apartment was located when the stabbing occurred, "the other guy" stabbed the victim in the neck first and then he (Mr. Simmons) stabbed the victim once. Police later interviewed Ms. Nemetz a third time and she identified Mr. Johnson from a photo lineup as the other man who came to her apartment on the night of the stabbing and then went to Mr. Masterson's apartment.

[¶7] On March 11, 2013, police interviewed Mr. Masterson. He identified Mr. Johnson from a photo lineup as the man who stabbed him but was unable to identify Mr. Simmons. Mr. Johnson was subsequently arrested and charged with one count of attempted first degree murder in violation of Wyo. Stat. Ann. §§ 6-2-101 (LexisNexis 2015) and 6-1-301 (LexisNexis 2015), one count of aggravated burglary in violation of Wyo. Stat. Ann. § 6-3-301, one count of conspiracy to commit aggravated burglary and one count of aggravated assault in violation of Wyo. Stat. Ann. § 6-2-502 (LexisNexis 2015). Prior to trial, Mr. Johnson's cellmate informed police Mr. Johnson had told him that he and Mr. Simmons went to the apartment, ambushed Mr. Masterson, stabbed him, and attempted to slash his throat. The cellmate indicated Mr. Johnson had said he and Mr. Simmons intended to kill Mr. Masterson because he was a child molester. The cellmate also indicated Mr. Johnson said Ms. Nemetz owed Mr. Masterson money and he hoped by killing Mr. Masterson he might get in good with her brothers who were part of the Hell's Angels motorcycle gang.

[¶8] After a two and a half day trial, the jury found Mr. Johnson guilty on all counts. The district court sentenced him to a term of life according to law on the attempted first degree murder conviction and terms of eight to ten years each for the aggravated burglary, conspiracy and aggravated assault convictions. The district court ordered the aggravated burglary sentence to be served concurrently to the life according to law sentence, the conspiracy sentence to be served concurrently to the life according to law and first eight to ten year sentence and the aggravated assault sentence to be served concurrently to the other three sentences. Mr. Johnson timely appealed from the judgment and sentence.

## STANDARD OF REVIEW

[¶9] Mr. Johnson asserts the district court erred when it instructed the jury on the definition of malice. He did not object to the instruction, therefore, we review the issue for plain error. *Collins v. State*, 2015 WY 92, ¶ 10, __ P.3d __ (Wyo. 2015) citing *Fennell v. State*, 2015 WY 67, ¶ 23, 350 P.3d 710, 719 (Wyo. 2015) and *Anderson v. State*, 2014 WY 74, ¶ 40, 327 P.3d 89, 99 (Wyo. 2014). Plain error exists when: 1) the

record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice. *Id.*

[¶10]   Mr. Johnson also contends the district court erred in denying his motion for judgment of acquittal on the conspiracy to commit aggravated burglary conviction, arguing the evidence presented was insufficient to support it.   In determining whether there was sufficient trial evidence to sustain a conviction, we apply the following standards:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it.   We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.

*Mraz v. State*, 2014 WY 73, ¶ 10, 326 P.3d 931, 934-935 (Wyo. 2014), citing *Ken v. State*, 2011 WY 167, ¶ 19, 267 P.3d 567, 572 (Wyo. 2011).

## DISCUSSION

### 1.   Definition of Malice.

[¶11]   Under Wyoming law, the crime of attempted first degree murder is defined as follows:

> **§ 6-1-301. Attempt**; …
>
>  (a) A person is guilty of an attempt to commit a crime if:
>     (i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime;
>
> **§ 6-2-101. Murder in the first degree**; …
>
>         (a) Whoever purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, any sexual assault, sexual abuse of a minor, arson, robbery, burglary, escape, resisting arrest, kidnapping or abuse of a child under

3

the age of sixteen (16) years, kills any human being is guilty of murder in the first degree.

[¶12]   The district court gave the jury the following instruction on the attempted first degree murder charge.

INSTRUCTION NO. 14

The elements of the crime of Attempt to Commit First Degree Murder, as charged in Count One of the Information in this case, are:

1.  On or about March 4, 2013;
2.  In Natrona County, Wyoming;
3.  The Defendant, Zacharia Lee Johnson;
4.  Intending to commit the crime of First Degree Murder;
5.  Did an act which was a substantial step towards committing the crime of First Degree Murder.

The elements of the crime of First Degree Murder are:

1.  On or about March 4, 2013;
2.  In Natrona County, Wyoming;
3.  The Defendant, [Mr.] Johnson;
4.  Purposely;
5.  With premeditated malice;
6.  Killed a human being.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶13]   The district court also gave the jury the following instructions on attempted second degree murder, the lesser included offense of attempted first degree murder:

INSTRUCTION NO. 15

If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged in Count One,

4

he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged, if the evidence is sufficient to establish his guilt of such lesser offense beyond a reasonable doubt.

The offense of Attempt to Commit First Degree Murder, with which the defendant is charged, also includes the lesser offense of Attempt to Commit Second Degree Murder.

INSTRUCTION NO. 16

The elements of the crime of Attempt to Commit Second Degree Murder are:

1. On or about March 4, 2013;
2. In Natrona County, Wyoming;
3. The Defendant, [Mr.] Johnson;
4. Intending to commit the crime of Second Degree Murder;
5. Did an act which was a substantial step towards committing the crime of Second Degree Murder.

The elements of the crime of Second Degree Murder are:

1. On or about March 4, 2013;
2. In Natrona County, Wyoming;
3. The defendant, [Mr.] Johnson;
4. Purposely and;
5. Maliciously;
6. Killed a human being.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶14]   The district court gave the jury the following instruction defining the terms "premeditated malice," as used in the attempted first degree murder instruction, and "malice" or "maliciously," as used in the lesser included offense instruction.

INSTRUCTION NO. 17

5

…

> "Premeditated malice" means that the defendant thought about and considered the idea of killing before the act which caused death was committed, and that the act which caused death was done with intent to kill and without legal justification or excuse. Premedit[ation] requires an interval sufficient to form the intent to kill before the commission of the act intended to result in death.
>
> The term "malice" means that the act(s) constituting the offense charged was/were done intentionally, without legal justification or excuse or that the act(s) was/were done in such a manner as to indicate hatred, ill will, or hostility towards another. "Maliciously" means acting in the state of mind in which an intentional act is done without legal justification or excuse. The term "maliciously" conveys the meaning of hatred, ill will, or hostility toward another.

[¶15]   On appeal, Mr. Johnson contends this instruction incorrectly defined the term "malice." He asserts this Court rejected the definition contained in the instruction in *Wilkerson v. State*, 2014 WY 136, ¶ 27, 336 P.3d 1188, 1200 (Wyo. 2014). The State responds that *Wilkerson* involved the second degree murder statute and does not apply to attempted first degree murder. Rather, the State contends, first degree murder requires proof that the defendant intended to kill, took action strongly corroborative of the firmness of that intent and did so purposely with premeditated malice.

[¶16]   *Wilkerson* was decided five months after Mr. Johnson's trial. There, the defendant was convicted of second degree murder after he punched the victim on the right side of the head causing him to fall off his barstool and strike his head as he fell to the floor. *Id.*, ¶ 4, 336 P.3d at 1189. As the victim lay unconscious on the floor, the defendant kicked or stomped in his direction. The victim was transported to the hospital where he was pronounced dead. At trial, the district court gave the jury the same definition of the terms "malice" and "maliciously" the district court gave in Mr. Johnson's case, that is:

> The term malice means that act(s) constituting the offense charged was/were done intentionally, without legal justification or excuse or that the act(s) was/were done in such a manner as to indicate hatred, ill will, or hostility towards another.
>
> "Maliciously" means acting in the state of mind in which an intentional act is done without legal justification or

6

excuse. The term "maliciously" conveys the meaning of hatred, ill will, or hostility toward another.

*Id*., ¶ 8, 336 P.3d at 1191. The jury convicted the defendant of second degree murder.

[¶17] On appeal, the defendant asserted the district court erred in giving the malice instruction. While noting the jury instruction was in accord with Wyoming precedent, this Court concluded the definition of malice did not satisfy the malicious intent requirement of second-degree murder under Wyo. Stat. Ann. § 6-2-104 (LexisNexis 2011). Consequently, we overturned our precedent and reversed the conviction. *Id*., ¶ 1, 336 P.3d at 1189. We held that "malice," as used in the second degree murder statute, means that the act constituting the offense was done "recklessly under circumstances manifesting extreme indifference to the value of human life, and that the act was done without legal justification or excuse." *Id*., ¶ 27, 336 P.3d at 1200.

[¶18] We conclude the definition of malice this Court adopted in *Wilkerson* does not apply in the present case. The offense charged in *Wilkerson* was second degree murder, a general intent crime that does not require proof of intent to kill. It is sufficient in the case of second degree murder that the defendant acted recklessly. The offense charged in the present case was attempted first degree murder. First degree murder is a specific intent crime requiring proof of intent to kill. Proof that a defendant acted recklessly is not sufficient to prove malice in the context of first degree murder.

[¶19] In the context of first degree murder, this Court recently approved a jury instruction defining "malice" to mean "that the act(s) constituting the offense charged was/were done intentionally, without legal justification or excuse <u>or</u> that the act(s) was/were done in such a manner as to indicate hatred, ill-will, or hostility towards another." *Rolle v. State*, 2010 WY 100, ¶ 32, 236 P.3d 259, 273 (Wyo. 2010). Earlier, however, in *Keats v. State*, 2003 WY 19, ¶ 16, 64 P.3d 104, 106 (Wyo. 2003), the Court made it clear that except in the context of first degree arson (where malice requires proof *either* that the defendant acted "without legal justification or excuse" *or* "with ill will and hostility"), malice requires proof of an intentional act done without legal justification or excuse <u>and</u> hatred, ill will or hostility. We think the latter approach finds better support in the law in the context of first degree murder. The malice instruction given in *Rolle* leaves open the possibility that a jury could convict a defendant based solely on proof that he acted in a manner indicating hatred, ill-will, or hostility without finding that he acted intentionally, with no legal justification or excuse. Proof that a defendant acted intentionally, without legal justification or excuse is essential to support a first degree murder conviction. We hold that juries must be instructed in first degree murder cases that "malice" means the defendant acted intentionally without legal justification or excuse *and* with hatred, ill will or hostility. Because the jury instruction in Mr. Johnson's case stated that malice means the acts constituting the offense charged were done intentionally, without legal justification or excuse <u>*or*</u> were done in a manner indicating

hatred, ill will, or hostility towards another, it was not a correct statement of the law. The question is whether that error requires reversal of Mr. Johnson's conviction.

[¶20] In *Miller v. State*, 2015 WY 68, 350 P.3d 264 (Wyo. 2015), we were asked to decide whether *Wilkerson* should be applied to a second degree murder case that went to trial before *Wilkerson* was published. We noted that this Court had not addressed the issue, but cited *Johnson v. United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997), in which the Court held plain error in jury instructions is evaluated according to the law existing at the time of appellate review. *Miller*, ¶ 7 350 P.3d at 745. For purposes of *Miller*, however, we found it unnecessary to decide whether the *Wilkerson* definition of malice applied because, whether or not an incorrect instruction was given in violation of clearly established law, Mr. Miller had not demonstrated he was prejudiced by the instruction. *Id.*, ¶ 8, 350 P.3d at 745.

[¶21] As in *Miller*, we decline the invitation to apply the definition of malice we adopt today to Mr. Johnson's trial because whether or not the malice instruction given in his case violated clearly established law, Mr. Johnson cannot show that he was materially prejudiced.

[¶22] To prove that Mr. Johnson attempted to commit first degree murder, the State had to show that he purposely and with premeditated malice took action strongly corroborative of the intent to kill a human being. It had to show that he did so intentionally without legal justification or excuse and with hatred, ill will or hostility. To make that showing, the State presented evidence that Mr. Johnson went to the victim's apartment and attacked him with a knife, stabbing him repeatedly in the chest and in the stomach, groin and arms. He also tried to cut the victim's throat and would have succeeded in killing him if the knife had been sharp. A paramedic called to the scene observed that the victim had several open wounds to his chest that were bubbling air and blood out, indicating his chest cavity had been punctured and his lung had collapsed. He described the injuries as severe and life threatening.

[¶23] The State also presented evidence that when the victim arrived at the emergency room he was in extremis, i.e. at the point of death. He was diagnosed with tension pneumothorax, which results when a sharp object is inserted between the ribs, puncturing the lung and putting pressure on the heart. The emergency room physician testified that if not promptly treated, such injuries would cause death. The physician documented some nine stab wounds in his report.

[¶24] The State also presented evidence that after the stabbing, Mr. Johnson's ex-girlfriend overheard him talking on the phone and saying he did not like "chi-mos", he had done something to a "chi-mo" and the guy deserved it. She testified she learned later that "chi-mo" meant child molester. The State also presented the testimony of Mr. Johnson's cellmate that Mr. Johnson said he and Mr. Simmons went to the apartment,

ambushed Mr. Masterson, stabbed him, and attempted to slash his throat with the intent to kill him because he was a child molester. Considering this evidence, we conclude no reasonable probability existed that the verdict would have been more favorable to Mr. Johnson but for the challenged instruction. The evidence presented was more than sufficient to persuade a reasonable jury that Mr. Johnson acted with the intent to kill, without legal justification or excuse, and in a manner indicating hatred, ill will or hostility. The instructional error did not constitute plain error.

## 2. Sufficiency of the evidence of conspiracy.

[¶25]   Mr. Johnson contends the evidence was insufficient to support the conviction for conspiracy to commit aggravated burglary because there was no evidence he had an agreement with anyone to commit a crime. He was convicted under the following statutes:

> **§ 6-3-301. Burglary; aggravated burglary; …**
>        (a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit theft or a felony therein.
>        …
>
>        (c) Aggravated burglary is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,000.00), or both, if, in the course of committing the crime of burglary, the person:
>                (i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon;
>                (ii) Knowingly or recklessly inflicts bodily injury on anyone;
>
> **§ 6-1-303. Conspiracy; …**
>        (a)    A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

[¶26]   Pursuant to these provisions, in order to show Mr. Johnson conspired to commit aggravated burglary, the State had to prove that he agreed with another person to enter or remain without authority in Mr. Masterson's apartment with the intent to commit a felony and he or his co-conspirator were armed with a deadly weapon and knowingly or

recklessly inflicted bodily injury on Mr. Masterson. For a conspiracy conviction to be sustained, "the evidence must show beyond a reasonable doubt that the parties to the conspiracy voluntarily agreed to commit an offense." *Remmick v. State,* 2012 WY 57, ¶ 30, 275 P.3d 467, 473 (Wyo. 2012), quoting *Martinez v. State*, 943 P.2d 1178, 1183 (Wyo. 1997). However, the evidence need not show a "meeting of the minds" as is required in contract law; instead, evidence of a tacit understanding will suffice. *Remmick*, ¶ 30, 275 P.3d at 473, citing *Smith v. State*, 902 P.2d 1271, 1281-82 (Wyo. 1995). Neither a written statement nor spoken words communicating agreement is required. *Id*. Inferences drawn from the course of conduct of the alleged conspirators is sufficient. *Id*.

[¶27] In *Remmick*, ¶ 29, 275 P.3d at 473, the defendant asserted insufficient evidence was presented to support her conviction for conspiracy to commit larceny by bailee. Specifically, she claimed there was a complete lack of evidence to show she entered into an agreement with her mother to commit the crime. *Id*. We concluded otherwise on the basis of evidence that her mother opened a charge account in the name of an entity she was doing bookkeeping for and made her daughter a signatory on the account. *Id*., ¶ 32, 275 P.3d at 474. The account was not authorized by the entity and its representatives were not aware the account existed. The defendant used the account. We concluded it was "reasonable to infer that she could not have done so without an agreement with her mother, at least the tacit sort of agreement necessary to sustain a conspiracy charge." *Id*. Giving the State all favorable inferences that could reasonably be drawn from the evidence, we concluded there was sufficient evidence for a jury to find that there was an agreement between the defendant and her mother for purposes of proving defendant conspired to commit larceny by a bailee. *Id*.

[¶28] In the present case, the lead detective testified that he interviewed Mr. Johnson's former girlfriend who said she had heard Mr. Johnson talking on the telephone about how Mr. Simmons came and picked him up and they went to Ms. Nemetz's apartment and "took care of the child molester." The detective also testified that during his first interview of Ms. Nemetz, she told him two men, later identified as Mr. Johnson and Mr. Simmons, went into Mr. Masterson's apartment. The detective testified that in a subsequent interview, Ms. Nemetz told him that she tried to follow Mr. Johnson into Mr. Masterson's apartment but Mr. Simmons pushed her out of the way and pushed his way inside. One of the first police officers on the scene testified Mr. Masterson told her that two white males had come into his apartment and stabbed him. Mr. Johnson's cellmate in the detention center testified Mr. Johnson told him that when he and Mr. Simmons went to the apartment they intended to kill Mr. Masterson. The cellmate further testified Mr. Johnson told him that when they got to the apartment, they went inside, tackled Mr. Masterson and stabbed him. He testified Mr. Johnson said specifically that both he and Mr. Simmons stabbed Mr. Masterson. Accepting as true the State's evidence and all reasonable inferences that can be drawn from it, we conclude sufficient evidence was presented to establish Mr. Johnson and Mr. Simmons tacitly agreed to enter Mr.

10

Masterson's apartment without authority to commit a felony, were armed with a deadly weapon and inflicted bodily injury on Mr. Masterson.

[¶29]  Affirmed.