**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES E. PEARSON,

    Petitioner - Appellant,

v.

WYOMING ATTORNEY GENERAL,

    Respondent - Appellee.

No. 20-8051
(D.C. No. 1:19-CV-00168-ABJ)
(D. Wyo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **MORITZ**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Pro se prisoner James E. Pearson is serving a life sentence for aggravated arson and attempted first-degree murder. He seeks a certificate of appealability (COA) to appeal from the district court's order denying his 28 U.S.C. § 2254 habeas petition. As explained below, we deny a COA and dismiss this matter.

**BACKGROUND**

On September 6, 2014, Pearson drove to Gillette, Wyoming in "an uncommon automobile" to see Autumn Evans, a woman with whom he had a relationship. *Pearson*

_____

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*v. State*, 389 P.3d 794, 795 (Wyo. 2017). He picked her up from her third-floor room at the Rodeway Inn, took her to another motel, and gave her some methamphetamine to sell.

Later, when Pearson could not find Evans, he went to her room at the Rodeway Inn. Evans was in the room, but she hid behind the bed and "instructed a man who was in the room with her, Cameron Means, to tell . . . Pearson that she was not there." *Id.* When Means answered the door, Pearson said he was looking for Evans "because she needed to pay for the methamphetamine." *Id.* at 796. According to Means, Pearson seemed "agitated and tried to look . . . into the room." *Id.* at 800. Means said Evans was not there.

Shortly after 1:00 a.m. on September 7, Pearson bought gasoline. About fifteen minutes later, video cameras captured a car resembling Pearson's car near the Rodeway Inn.

Jolene Boos was outside the Rodeway Inn when Pearson drove up in his car and got out. She recognized him in part because of his above-average height. He was carrying a "reddish orange object" and looking for Evans. *Id.* at 800 (internal quotation marks omitted). Pearson went inside. Boos saw him look down at her from the third-floor stairwell window. Not long afterward, a fire erupted, badly damaging the third floor and injuring some of the motel's occupants.

Investigators "recovered a burnt metal fuel can from the hallway outside of . . . Evans' room," *id.*, and they "determined that the fire had been set deliberately outside of [her room] using gasoline as an accelerant," *id.* at 796. "A patrol car video camera and cell phone location records indicated that . . . Pearson left town just before the fire was

2

reported." *Id.* When interviewed by police, Pearson said "he was angry because . . .

Evans had stolen methamphetamine from him." *Id.* at 800.

Prosecutors charged Pearson with aggravated arson and attempted first-degree

murder (of Evans). At trial, Means testified for the State, describing his encounter with

Pearson in Evans' doorway. On cross-examination, defense counsel pursued a theory of

alternative suspects by eliciting from Means that Evans had "scamm[ed]" other people

for drugs or money, not just Pearson, *id.* at 802, and that a man named Christopher

Phillips was at the motel the night of the fire and had been angry at Means. Pearson did

not testify.[1] A jury found Pearson guilty as charged.

Pearson appealed to the Wyoming Supreme Court, arguing (1) there was

insufficient evidence that he intended to kill Evans; and (2) the prosecutor failed to timely

disclose immunity and plea agreements with Means. The court rejected his arguments

and affirmed his convictions.

Pearson then sought postconviction relief, claiming that appellate counsel was

ineffective for not arguing that (1) insufficient evidence supported his arson conviction;

(2) the trial court's directive to stand violated the Fifth Amendment; and (3) trial counsel

was ineffective. The postconviction court denied relief and the Wyoming Supreme Court

summarily denied review.

---

[1] Evans died of unrelated causes before Pearson's trial.

Next, Pearson filed the instant habeas petition, advancing many of the claims he brought in state court. The federal district court determined that Pearson's habeas claims lacked merit and it dismissed his petition. The court declined to issue a COA.

## DISCUSSION
### I. Standards of Review

To appeal the denial of a § 2254 petition, Pearson must obtain a COA by "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Our consideration of a COA request incorporates the Antiterrorism and Effective Death Penalty Act's (AEDPA's) "deferential treatment of state court decisions." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

Under AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if that state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

Because Pearson is pro se, we liberally construe his habeas petition, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), but to the extent he seeks a COA on claims not present in that petition, those claims are waived, *see Owens v. Trammell*, 792 F.3d 1234, 1246 (10th Cir. 2015).

4

## II. Sufficiency of the Evidence

In resolving a sufficiency-of-the-evidence claim, a court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In other words, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

On direct appeal, the Wyoming Supreme Court "conclude[d] that the trial evidence, when viewed in the light most favorable to the jury's verdict, establishe[d] that Mr. Pearson intended to kill . . . Evans when he set the fire." *Pearson*, 389 P.3d at 800.[2] The court explained that "Pearson was looking for . . . Evans right before the fire started," "[h]e set the fire with an accelerant in the middle of the night directly outside of her third floor motel room, from which she had no clear means of escape," and "he was angry at [her] and left town immediately after starting the fire." *Id.* at 801.

The district court found no unreasonable application of *Jackson* and observed that Pearson merely offered his own account of the events at issue, while complaining that the Wyoming Supreme Court credited the prosecution's evidence.

We conclude that the district court's determination is not debatable. "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge" unless the "decision was objectively unreasonable." *Cavazos*, 565 U.S. at 2

---

[2] On direct appeal, Pearson did "not challenge the jury's conclusion that he set the fire." *Pearson*, 389 P.3d at 799.

5

(internal quotation marks omitted). The Wyoming Supreme Court's decision was not objectively unreasonable in regard to the intent-to-kill element, as it cited evidence that Pearson was angry at Evans over a drug debt and that he set a fire using a gasoline accelerant outside her third-floor room. *See Johnson v. State*, 356 P.3d 767, 773 (Wyo. 2015) (stating that an attempt to commit first-degree murder requires that the defendant "purposely and with premeditated malice took action strongly corroborative of the intent to kill a human being").

Although Pearson contends he "knew (or believed)" Evans was not in her room when he set the fire, he identifies no evidence from which the jury could have reached that conclusion. Combined Opening Br. and Appl. for COA at 17. Moreover, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

We conclude a COA is not warranted regarding sufficiency of the evidence of attempted murder.

### III. Ineffective Assistance of Appellate Counsel

**A.    Sufficiency of the Evidence as to the Arsonist's Identity**

In the state postconviction proceedings, Pearson complained that appellate counsel should have argued he was not the arsonist. Although the postconviction court denied Pearson's petition without commenting on the claim, "we presume the court reached a decision on the merits." *Simpson v. Carpenter*, 912 F.3d 542, 583 (10th Cir. 2018)

6

(brackets and internal quotation marks omitted). The district court apparently rejected this claim for the same reason it rejected his sufficiency-of-the-evidence challenge to his attempted-murder conviction—it was based on his own factual narrative.

"To succeed on an [ineffective-assistance] claim premised on the failure to raise an issue on appeal, a petitioner must show both that (1) appellate counsel performed deficiently in failing to raise the particular issue on appeal and (2) but for appellate counsel's deficient performance, there exists a reasonable probability the petitioner would have prevailed on appeal." *Davis v. Sharp*, 943 F.3d 1290, 1299 (10th Cir. 2019), *cert. denied*, 141 S. Ct. 452 (2020); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (formulating the deficient-performance/prejudice test for ineffective-assistance claims). "[I]n evaluating an argument that appellate counsel performed deficiently in failing to raise an issue on appeal, this court typically examines the merits of the omitted issue," and "[i]f the omitted issue is meritless, its omission will not constitute deficient performance." *Davis*, 943 F.3d at 1299 (brackets and internal quotation marks omitted).

In his request for a COA, Pearson argues that the state's case against him was an "evidentiary pyramid scheme" built by "piling inference upon inference" with "no evidentiary connection between [him] and the fire." Combined Opening Br. and Appl. for COA at 8. But the facts identified by the Wyoming Supreme Court—which he has not shown were unreasonably determined in light of the evidence[3]—were sufficient for a

---

[3] *See Smith v. Sharp*, 935 F.3d 1064, 1074 (10th Cir. 2019) (noting that a sufficiency-of-the-evidence challenge in a habeas petition implicates both the unreasonable application of federal law under § 2254(d)(1) and the unreasonable determination of facts under § 2254(d)(2)), *cert. denied*, 141 S. Ct. 186 (2020).

7

rational jury to determine he set the fire. Specifically, when he was unable to obtain payment for the methamphetamine he had given Evans, he purchased gasoline and returned to the Rodeway Inn carrying an object consistent with a gas container. According to Boos, he was looking for Evans and went to the third floor. Soon thereafter, a gasoline-fueled fire erupted outside Evans' room, with Pearson fleeing town right before the fire was reported.

Given that the evidence implicated Pearson as the arsonist, appellate counsel reasonably could have decided to omit a sufficiency-of-the-evidence claim regarding the arsonist's identity and instead present a sufficiency-of-the-evidence claim on the intent element of attempted murder. *See Davis*, 943 F.3d at 1299 (noting that "appellate attorneys frequently winnow out weaker claims in order to focus effectively on those more likely to prevail" (internal quotation marks omitted)). Because "there is a[ ] reasonable argument that [appellate] counsel satisfied *Strickland*'s deferential standard," *id.*, we deny a COA.

## B. Self-Incrimination

Pearson claimed appellate counsel should have argued his Fifth Amendment privilege against self-incrimination was violated when he was ordered at trial to stand up after a witness identified him as having above-average height. The postconviction court rejected the claim, stating that the order to stand did not compel incriminating evidence of a testimonial or communicative nature. *See Gilbert v. California*, 388 U.S. 263, 266 (1967) (holding that "[t]he taking of [handwriting] exemplars did not violate petitioner's

8

Fifth Amendment privilege against self-incrimination"). The federal district court acknowledged the claim but did not analyze it.

No "fairminded jurist[ ] would agree that the [postconviction] court got [this ineffective-assistance-of-appellate-counsel claim] wrong." *Davis*, 943 F.3d at 1299 (internal quotation marks omitted). *See Peoples v. United States*, 365 F.2d 284, 285 (10th Cir. 1966) ("Requiring a defendant to stand in court for purposes of identification is not a violation of the Fifth Amendment."); *accord Mikus v. United States*, 433 F.2d 719, 726 (2d Cir. 1970) ("[I]t is well established that a defendant may be compelled to stand up during trial for purposes of identification and comparison, and that such compulsion results in non-testimonial or non-communicative evidence given by a defendant which is not protected by the Fifth Amendment privilege against self-incrimination" (citation omitted)). Thus, a COA is not warranted.

## C.    Ineffective Assistance of Trial Counsel

In the postconviction proceedings, Pearson identified five claims of ineffective assistance of trial counsel he believed appellate counsel should have raised. The postconviction court found no deficient performance by trial counsel and therefore no deficient performance by appellate counsel. The federal district court summarily concluded the claims lacked merit.

### 1.    Voir Dire & Opening Statements

Pearson complained in the postconviction proceedings that trial counsel informed the jury during voir dire and opening statements that he "was involved with drugs" and had "done time before for involvement with drugs." R., Vol. III at 901, 954. The

9

postconviction court determined that counsel did not perform deficiently because he was attempting to ascertain bias in prospective jurors and was utilizing "a legitimate strategy of defense in bringing to light negative information before the prosecution c[ould] frame and elicit the information." *Id.*, Vol. I at 227.

Indeed, identifying anti-drug biases in a case involving a drug transaction and lessening the sting of a prior conviction in the event the defendant testifies are legitimate trial strategies. *See Smith v. Spisak*, 558 U.S. 139, 161 (2010) (Stevens J., concurring in part and concurring in the judgment) (stating that it "is generally a reasonable" trial strategy "to draw the sting out of the prosecution's argument and gain credibility with the jury by conceding the weaknesses of [counsel's] own case"). Because Pearson's trial counsel pursued a legitimate defense strategy, the postconviction court did not unreasonably apply *Strickland* in rejecting this claim of ineffective assistance of appellate counsel. A COA is not warranted.[4]

---

[4] Pearson, who is African-American, also argued his attorney was ineffective during voir dire by "identif[ying]" with 1970's television character Archie Bunker. R., Vol. III at 887-88. The postconviction court recognized this claim generally and rejected it.

The trial transcript shows defense counsel was attempting to uncover potential racial bias in the jury pool by referencing a familiar racist figure. While defense counsel could have pursued a less racially inflammatory strategy, it is clear he was attempting to encourage potential jurors to reveal racial bias. "The question [for ineffective-assistance analysis] is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks omitted). Because there is a reasonable argument that appellate counsel satisfied *Strickland*'s deferential standard by omitting a meritless ineffective-assistance-of-trial-counsel claim, we deny a COA on this issue.

2.      Vehicle Testing

Pearson complained that trial counsel failed to "[bring] to the court's attention [that] a search of [his] vehicle using both a trained arson K9 and testing equipment . . . failed to disclose any evidence of gasoline/accelerant within [his] car." R., Vol. II at 132. The postconviction court found no deficient performance because trial counsel had in fact shown that no test "results . . . show[ed] petroleum products in the trunk . . . [o]r in the vehicle." *Id.*, Vol. III at 550 (cross-examination of police investigator); *see also id.* at 677 (closing argument).

In his request for a COA, Pearson argues the postconviction court erred because the test results "cleared" him. Combined Opening Br. and Appl. for COA at 11. But the tests did not confirm the *absence* of gasoline—they only failed to detect its presence. A COA is not warranted.

3.      Cross-examination of Boos

Pearson argued that trial counsel ineffectively cross-examined Boos about her testimony identifying him at the Roadway Inn with an orange-reddish object before the fire. The postconviction court determined that trial counsel did not perform deficiently because he "questioned her description [of the arsonist] to police, . . . used screen shot images from lobby security footage to contradict the description," and "elicited testimony that . . . a number of similar looking persons [passed] through the lobby that night." R., Vol. I at 226.

In his request for a COA, Pearson does not dispute the postconviction court's description of defense counsel's cross-examination. Nor does he explain how that

11

cross-examination was so deficient that it prejudiced his defense and should have been included as an argument on appeal. Accordingly, we deny a COA as to this claim.

4.      The Presence of Uniformed Firefighters in the Courtroom

Pearson argued that appellate counsel should have raised trial counsel's failure to exclude about a dozen uniformed firefighters from observing the final day of trial. Trial counsel had objected to the firefighters' presence in the audience as "highly prejudicial," and he moved to exclude them. *Id.*, Vol. III at 525. But the trial court overruled the objection, stating it would "monitor the situation" and enter "an appropriate order" if their presence distracted the jury. *Id.* at 530.

The postconviction court addressed the claim in the context of due process, ruling that the firefighters' presence had not prejudiced Pearson's right to a fair trial. *See Holbrook v. Flynn*, 475 U.S. 560, 571 (1986) (finding no "unacceptable risk of prejudice in the spectacle of four [uniformed and armed police] officers quietly sitting in the first row of a courtroom's spectator section").

In his request for a COA, Pearson contends the firefighters "were there solely to intimidate the jurors." Combined Opening Br. and Appl. for COA at 10. But he offers no support for that contention. Nor does he address the trial court's determination that the prosecution did not orchestrate the firefighters' attendance. In short, Pearson has not shown that the postconviction court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination. We thus deny a COA.

5.    Alternative Suspect

Pearson complained that appellate counsel should have raised trial counsel's failure to present Phillips as a trial witness. Evidently, Evans told police that Phillips had threatened to kill Means and had purchased some of Pearson's methamphetamine while in her room at the Roadway Inn before the fire. After Phillips left her room, he telephoned Evans and she overheard a voice she thought was Pearson's saying, "tell her to come downstairs." R., Vol. I at 208 (internal quotation marks omitted). A few minutes later, Pearson knocked on her door and spoke with Means while Evans hid inside. Based on these events, Pearson surmised that "he stumbled" upon a sting operation targeting Evans or Means that may "have recorded Phillips['] threat to kill . . . Means as well as whomever walked by Ms. Boos immediately before the fire." *Id.*, Vol. II at 129, 130.

The postconviction court concluded that trial counsel made a strategic decision to not present Phillips as a witness because there was no indication his testimony would have been helpful. Consequently, the court found that appellate counsel did not perform deficiently by omitting the matter on appeal.[5]

In his COA request, Pearson repeats his suspicion that he uncovered a sting operation that might have evidence of Phillips' threat against Means and the identity of

---

[5] The postconviction court also determined that appellate counsel was not ineffective for omitting a claim that the government withheld exculpatory evidence concerning Phillips' communications with Evans. The court explained there was no indication the State had withheld any such evidence. Pearson has not explained how that decision contravenes or unreasonably applies federal law.

13

the individual who walked past Boos and into the motel. But Pearson has not shown that "all fairminded jurists would agree that the state court got [this ineffective-assistance-of-appellate-counsel claim] wrong." *Davis*, 943 F.3d at 1299 (internal quotation marks omitted). In particular, trial counsel pursued an alternative-suspects theory, telling the jury in his opening statements "that there were other people who had motive to accomplish this crime," including Phillips, R., Vol. III at 955, and cross-examining Means about the "bad blood" with Phillips and Evans scamming other people, *id.* at 331. At the same time, trial counsel avoided any potential testimony from Phillips showing Pearson's awareness that Evans was in the room before the fire. Thus, there is a reasonable argument that appellate counsel did not perform deficiently by omitting this ineffective-assistance-of-trial-counsel claim.

## CONCLUSION

We deny a COA and dismiss this matter.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

14