DAVIS, Chief Justice.
[¶1] Wade Richard Farrow appeals his second-degree murder conviction, asserting that the district court committed several reversible errors during the course of his trial, and further contending that he received ineffective assistance of trial counsel. We affirm.
ISSUES
[¶2] Mr. Farrow presents four issues:
I. Did the district court err when it instructed the jury?
II. Did the district court abuse its discretion when it prohibited testimony of specific instances of conduct relating to the victim's character for violence under W.R.E. 404(a)(2) and 405(b) ?
III. Did the prosecutors commit misconduct when they asserted to the jury that it needed to consider the fact that Mr. Farrow did not flee or leave the apartment prior to the physical altercation against his claim of self-defense?
IV. Did the district court err in finding that counsel for Mr. Farrow was not ineffective and denying his Rule 21 motion?
FACTS
[¶3] On the evening of December 20, 2014, Mr. Farrow and the woman he was living with, Whitney Lowham, went to a bar in Afton, Wyoming to celebrate a friend's birthday. After having a couple of drinks with friends, Ms. Lowham left the bar without Mr. Farrow and made her way to a party at Blake Jensen's apartment. Once at the apartment, the intoxicated Ms. Lowham kept falling asleep. Tyler Lindsey took her to Mr. Jensen's bedroom so that she could sleep.
[¶4] While still at the bar, Mr. Farrow confided in an acquaintance, Andy Johnson, that he was concerned that Ms. Lowham was with another man and worried that things would not work out between them. Mr. Farrow and Mr. Johnson stayed at the bar and talked until 2:00 a.m., then spent an additional twenty to thirty minutes talking in the parking lot. The pair then walked to Mr. Johnson's house where they continued to talk for an additional hour and a half. Mr. Johnson felt that Farrow was in a "pretty good spot emotionally" and that "everything kind of settled down" by that time, and the two decided to go look for Ms. Lowham.
[¶5] Mr. Johnson drove them to Mr. Farrow's apartment. Mr. Farrow went in to look for Ms. Lowham, but she was not there. Mr. Farrow returned to Mr. Johnson's truck, at which time he removed a pistol from the back of his pants and set it on his lap. The two then went to Mr. Jensen's apartment to look for Ms. Lowham.
[¶6] Before going to the apartment, Mr. Farrow tucked the pistol into the back of his pants. He and Mr. Johnson entered the apartment, where Farrow asked about Ms. *815 Lowham. He was told that Mr. Lindsey had taken Ms. Lowham back to one of the bedrooms, where she was asleep. Tony Hansen, who had been on the couch, began talking to Farrow. During the conversation, Mr. Farrow made a comment that Mr. Hansen perceived as derogatory towards Mr. Lindsey. Mr. Hansen began "lipping off," calling Farrow names and suggesting that the two go outside to fight.
[¶7] Mr. Farrow went back to the bedroom to check on Ms. Lowham. He spent approximately ten minutes with her before he walked back into the living room and sought help to get her out of the apartment and home. Mr. Hansen resumed taunting Mr. Farrow, calling him more names and continuing to insist that they should go outside and fight. Another individual suggested that the two should play beer pong to settle their dispute, and when Mr. Farrow agreed, Mr. Hansen responded, "Why, cuz you're a bitch?" In response, Mr. Farrow pulled out his pistol and either shoved it in Mr. Hansen's face or hit him across the face with it. Witnesses disagree over whether Mr. Hansen froze or threw a punch at Mr. Farrow.
[¶8] Mr. Farrow then turned his back to Mr. Hansen, placed the pistol up under his arm, and fired directly into Mr. Hansen's chest. Melanie Pumphrey attempted to separate the pair, and as a result was shot in the hip.
[¶9] After being shot the first time, Mr. Hansen fell on his back. Mr. Farrow positioned himself "straight over the top" of Mr. Hansen, steadied both hands on the pistol, and fired the remaining rounds into his body. Mr. Hansen sustained a total of seven gunshot wounds. Mr. Farrow fled the apartment and waited outside for law enforcement to arrive.
[¶10] Mr. Farrow testified to a different version of events. He told the jury that he did not want to leave without Ms. Lowham, and so he decided to ask Mr. Johnson to help him carry her out of the apartment. As soon as he returned to the living room after checking on Ms. Lowham, Mr. Hansen again suggested that they go outside to fight. Mr. Farrow turned his back to Mr. Hansen, and Mr. Hansen struck him in the back "really hard." Mr. Farrow testified that, in pain and in fear, he pulled out the pistol and stuck it in Mr. Hansen's face, though he was not planning to shoot him. Mr. Farrow slumped over, was getting hit repeatedly, and two other individuals had their hands on the pistol when his vision started to go black and the pistol fired. Mr. Farrow regained control of the pistol, saw Mr. Hansen standing, and shot him again several times. Mr. Hansen then fell back, and Mr. Farrow ran from the apartment.
[¶11] Mr. Farrow was charged with first-degree murder for the shooting death of Mr. Hansen and with aggravated assault and battery for the injury to Ms. Pumphrey. The jury acquitted him of first-degree murder, but found him guilty of the lesser included offense of second-degree murder. It also acquitted him of the aggravated assault and battery charge. The district court sentenced Mr. Farrow to serve thirty-five to sixty-five years imprisonment. Mr. Farrow appealed his conviction and sentence. He also filed a motion for a new trial pursuant to W.R.A.P. 21, asserting ineffective assistance of trial counsel. After holding an evidentiary hearing on the motion, the district court denied it. Mr. Farrow appealed that decision as well, and we consolidated his two appeals.
DISCUSSION
A. Jury Instructions
[¶12] Mr. Farrow asserts that the district court committed five reversible errors in instructing the jury. The district court "has extensive discretion in tailoring jury instructions, so long as they correctly state the law and fairly and adequately cover the issues presented." Merit Energy Co., LLC v. Horr , 2016 WY 3, ¶ 23, 366 P.3d 489, 497 (Wyo. 2016). "Accordingly, our review of a district court's decision to give or refuse a particular jury instruction is for an abuse of discretion." Id . When there is no objection to a jury instruction, however, we must review for plain error. Schmuck v. State , 2017 WY 140, ¶ 32, 406 P.3d 286, 297 (Wyo. 2017). We apply the appropriate standard of review to each of Mr. Farrow's claims. We begin with his three claims of improper instructions relating *816 to the issue of self-defense, then turn to his remaining two claims.
1. Right to Arm
[¶13] Mr. Farrow's first claim is that the district court improperly refused to give his proposed instruction explaining his right to arm himself. Because the question was presented to the district court, we review for abuse of discretion. Mr. Farrow proposed a jury instruction based on Wyoming Criminal Pattern Jury Instruction 8.05, which reads as follows:
One who has reasonable grounds to believe that another will attack him, and that the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such attack.
If the defendant armed himself in reasonable anticipation of such an attack, that fact alone does not make the defendant the aggressor or deprive the defendant of the right of self-defense.
The district court declined to give this instruction.
[¶14] On appeal, Mr. Farrow asserts that long-standing precedent supports his claim that the district court abused its discretion when it refused to give this jury instruction. He relies on several cases, including Brown v. State , 80 Wyo. 12, 336 P.2d 794 (1959), for the proposition that, when the evidence conflicts as to who the initial aggressor was, the jury should be instructed "as to [the] accused's right to arm himself in anticipation of danger, and, where such an instruction is warranted by the evidence, a refusal to give it constitutes error." Id. at 30, 336 P.2d at 801. Similarly, in Baier v. State , 891 P.2d 754 (Wyo. 1995), we quoted with approval from 41 C.J.S. Homicide § 350c, which said:
Where the court restricts the issue of self-defense by submitting the issue of provoking the difficulty, it should also instruct the jury as to accused's right to arm himself in anticipation of danger. Such an instruction is not required where the court instructs as to self-defense without any limitation as to provoking the difficulty.
Baier , 891 P.2d at 759. Mr. Farrow contends that the identity of the first aggressor was not merely at issue in his case, but "likely ... one of the most crucial issues for the jury to decide." The record supports this contention, with evidence including testimony from Mr. Johnson that "Mr. Hansen was definitely the one, you know, kind of - kind of initiating it."
[¶15] However, the prosecution argued to the district court that this instruction was inappropriate because Mr. Farrow did not testify that he armed himself in anticipation of an attack. His testimony, to the contrary, was that he picked up the firearm "just out of habit," and that it was his habit to carry the pistol with him. The district court agreed with the prosecution, and it declined to give the proposed jury instruction.
[¶16] In Brown , we quoted 41 C.J.S. Homicide § 378 c (4) to the effect that an instruction on the right of the defendant to arm himself in anticipation of attack
is neither necessary nor proper where such an issue is not raised by the evidence in the case, as where the evidence shows that, although accused was carrying a weapon at the time, he was doing so merely as was his usual custom, and not in anticipation of danger from deceased.
Brown , 80 Wyo. at 30, 336 P.2d at 800-01.
[¶17] The record includes some evidence that Mr. Farrow had anticipated an attack. For example, Mr. Johnson testified that when he asked about the pistol, Mr. Farrow said he "needed it in case he was attacked." This evidence conflicts with Mr. Farrow's own testimony that he carried the pistol as a matter of habit. In reviewing for abuse of discretion, we view the record "in the light most favorable to that decision and to the prevailing party." Nicodemus v. Lampert , 2014 WY 135, ¶ 11, 336 P.3d 671, 674 (Wyo. 2014). The district court gave greater credit to Mr. Farrow's testimony that he carried the pistol as a matter of habit and discounted evidence to the contrary. Viewing the evidence in a light favorable to that decision, we cannot conclude that the district court abused its discretion when it declined to instruct the jury on Mr. Farrow's claimed *817 right to arm himself in anticipation of an attack.
2. Determination of Aggressor
[¶18] Mr. Farrow's second claim of error on the issue of self-defense involves the instruction informing the jury that it must determine whether Mr. Farrow or Mr. Hansen was the aggressor. Instruction No. 22 read in relevant part:
In considering the claim of self-defense in this case, you must first determine whether the defendant was the aggressor in this case or whether Mr. Hans[e]n was the aggressor in this case. Some sort of physical aggression or a threat of imminent use of deadly force is required before a person will be considered an aggressor. Verbal provocation without more is generally insufficient to justify an initial aggressor.
The jury was further instructed that if it found that Mr. Farrow was the initial aggressor, he was "justified in using deadly force to repel the danger only if he retreated as far as he safely could do before using deadly force." In the alternative, the jury was informed that if it found that Mr. Hansen was the initial aggressor, then Mr. Farrow could "use deadly force only if necessary, and must consider reasonable alternatives under the circumstances."
[¶19] Mr. Farrow contends that the disputed jury instruction improperly required the jury to choose whether Mr. Farrow or Mr. Hansen was the aggressor. In other words, he claims that it was improper to force the jury to conclude that if Mr. Hansen was not the aggressor, then Mr. Farrow had to be. He asserts that the law requires the jury to decide only if the defendant was or was not the aggressor, but that it does not require the jury to decide whether the victim was the aggressor. "The victim is not on trial," Mr. Farrow maintains, "and a defendant is not required to vilify the victim at trial in order to establish that the defendant was not the aggressor."
[¶20] Mr. Farrow further asserts that because the instruction indicated that either Mr. Farrow or Mr. Hansen had to be the aggressor, the jury was not allowed to consider other possibilities. He posits that both could have been aggressors, or that neither one might have been. Mr. Farrow contends that the jury was misled about the law of self-defense because it was forced to make an artificial choice.
[¶21] As a preliminary matter, we must resolve the parties' disagreement over the standard of review. Mr. Farrow asserts that he objected to this instruction at trial, which would cause us to review for abuse of discretion. The State counters that we should review for plain error because Mr. Farrow's objection at trial was different from his issue on appeal. The record reflects that Mr. Farrow made this objection at trial:
We do object to this, your Honor. I think this is adequately covered in other instructions. Particularly, I'm concerned with the language .... The verbal provocation without more is generally insufficient to justify an initial aggressor. I'm not quite sure exactly what that means but I think it's confusing and unduly emphasizes one aspect of the evidence over the others. We would object to giving this one.
[¶22] We agree with the State that Mr. Farrow's issue on appeal is different from the objection made at trial. "Where the objection was not originally made on the ground now urged, the argument is without force. ... The objector should lay his finger on the particular point intended to be raised so that the trial court will have notice and an opportunity to cure the alleged error." Buszkiewic v. State , 2018 WY 100, ¶ 33, 424 P.3d 1272, 1282 (Wyo. 2018) (quoting Sanderson v. State, 2007 WY 127, ¶ 13, 165 P.3d 83, 88 (Wyo. 2007) ). See also Ortega v. State , 966 P.2d 961, 966 (Wyo. 1998) ("The spirit and policy of our rules with reference to jury instructions is to apprise and inform the district court of the purpose of offered jury instructions and of objections to proposed jury instructions so that the court may have an opportunity to correct and amplify them before submission to the jury."). Accordingly, we will review for plain error. As often stated, plain error exists when: "(1) the record clearly reflects the alleged error; (2) the party claiming the error demonstrates a violation *818 of a clear and unequivocal rule of law; and (3) the party proves that the violation adversely affected a substantial right resulting in material prejudice." Garriott v. State , 2018 WY 4, ¶ 21, 408 P.3d 771, 780-81 (quoting Hathaway v. State , 2017 WY 92, ¶ 29, 399 P.3d 625, 634 (Wyo. 2017) (quoting Griggs v. State , 2016 WY 16, ¶ 81, 367 P.3d 1108, 1132-33 (Wyo. 2016) ) ).
[¶23] The instruction challenged by Mr. Farrow appears in the record, satisfying the first requirement of plain error. We ask next if the instruction violated a clear and unequivocal rule of law. In Knospler v. State , 2016 WY 1, 366 P.3d 479 (Wyo. 2016), we reviewed an instruction nearly identical to the one Mr. Farrow challenges:
In considering the claim of self-defense in this case, you must first determine whether the Defendant was the aggressor in this case or whether Mr. Baldwin was the aggressor in this case. Some sort of physical aggression or a threat of imminent use of deadly force is required before a person will be considered an aggressor. Verbal provocation without more is generally insufficient to justify an initial aggressor.
Id. ¶ 25, 366 P.3d at 486. We determined that the instruction was consistent with our precedent, and that the district court did not abuse its discretion in giving it to the jury. Id . ¶ 27, 366 P.3d at 487.
[¶24] The instruction at issue in Widdison v. State , 2018 WY 18, 410 P.3d 1205 (Wyo. 2018), was also nearly identical to the one challenged by Mr. Farrow:
In considering the claim of self-defense in this case, you must first determine whether the defendant was the aggressor in this case or whether Mr. Jones was the aggressor in this case. Some sort of physical aggression or a threat of imminent use of deadly force is required before a person will be considered an aggressor. Verbal provocation without more is generally insufficient to justify an initial aggressor.
Id . ¶ 35, 410 P.3d at 1216. We found no error. Id . ¶¶ 36-39, 410 P.3d at 1217-18.
[¶25] In order to satisfy the second requirement of plain error, Mr. Farrow must show that the challenged instruction violated a clear and unequivocal rule of law. We cannot conclude that the district court violated a clear and unequivocal rule of law in Mr. Farrow's case by giving an instruction nearly identical to the instructions we approved in Knospler and Widdison . Mr. Farrow has therefore not demonstrated plain error.
[¶26] Further, if Mr. Farrow's argument about giving the jury other options has logical merit, it has no practical impact. He is correct that, in addition to Mr. Farrow or Mr. Hansen being the first aggressor, it is possible that they were both aggressors or that neither one was. However, if both were aggressors, "[o]ur case law also provides that two individuals who mutually agree to fight are both considered aggressors, making a self-defense theory unavailable to either of them." Coburn v. State , 2001 WY 30, ¶ 13, 20 P.3d 518, 521 (Wyo. 2001). On the other hand, if neither Mr. Farrow nor Mr. Hansen was the aggressor, then Mr. Farrow had no justification for resorting to self-defense. Drennen v. State , 2013 WY 118, ¶ 36, 311 P.3d 116, 128-29 (Wyo. 2013) ("[O]ne can use deadly force in self-defense only if he has reasonable grounds to believe it is necessary to avoid death or serious bodily harm."). Neither possibility suggested by Mr. Farrow - that both were aggressors or neither was - has any practical impact on his claim of self-defense. We conclude that the district court did not commit plain error by instructing the jury to determine whether Mr. Farrow or Mr. Hansen was the initial aggressor.
3. Retreat or Withdraw
[¶27] Mr. Farrow's third claim of instructional error on the issue of self-defense involves the requirement to retreat or withdraw. The district court gave Instruction No. 23 to the jury:
Even if the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm, the defendant was justified in using deadly force to repel the danger only if he retreated as far as he safely could do before using deadly force. The law requires a person to retreat rather than to take the life of an adversary if *819 there was a convenient mode of retreat without increasing his actual or apparent peril. To excuse a failure to retreat, it is necessary that the defendant's peril would be increased, or that it reasonably appeared that it would be increased, by retreat. If you find the defendant could have safely retreated but failed to do so, the defendant cannot rely on the justification of self-defense.
Because Mr. Farrow offered no objection to this instruction at trial, we review for plain error.
[¶28] On appeal, Mr. Farrow relies on Drennen v. State , 2013 WY 118, ¶ 30, 311 P.3d 116, 127 (Wyo. 2013), for the proposition that the aggressor in a conflict "must retreat or withdraw" before resorting to self-defense. He objects that the language of the instruction refers only to retreat, but does not also refer to withdrawal. Relying on our statement in Best v. State , 736 P.2d 739, 746 (Wyo. 1987), that "retreat is not the same as withdrawal," he claims that the district court committed plain error when it instructed the jury only about retreat and not also about withdrawal.
[¶29] We acknowledge our statement in Best that "retreat is not the same as withdrawal." 736 P.2d at 746. We explained that a " 'withdrawal' is an abandonment of the struggle and such abandonment must be perceived or made known to the adversary." Id . (quoting State v. Nunn , 697 S.W.2d 244, 247 (Mo. App. 1985) ). Retreat, on the other hand, is abandonment alone and does not require making that abandonment known to the other party. See State v. Mayberry , 360 Mo. 35, 226 S.W.2d 725, 727 (Mo. 1950) ("There is a difference between 'withdrawal in good faith' from combat, and a mere 'retreat' which may be and often is a continuance of hostilities.").
[¶30] Mr. Farrow's argument as to this jury instruction is that it referred only to retreat, not to withdrawal. But because withdrawal is something more than retreat, the instruction on retreat held Mr. Farrow to a lower standard than if it had also referred to withdrawal. Even if the instruction was erroneous, the error worked to Mr. Farrow's advantage, not to his prejudice. Accordingly, Mr. Farrow has not demonstrated that the district court committed plain error by giving this instruction.
[¶31] An initial aggressor has the greater burden of withdrawing before resorting to deadly force. Wyoming Criminal Pattern Jury Instruction 8.03A correctly reflects this duty:
Generally, the right to use self-defense is not available to an aggressor who provokes the conflict. However, if one provokes a conflict but thereafter withdraws in good faith and informs the adversary by words or actions of the desire to end the conflict and is thereafter pursued, that person then has the same right of self-defense as any other person. The person is justified in using force to the same extent that any other person would be who was acting in self-defense.
Wyoming Criminal Pattern Jury Instruction 8.03B is also an accurate explanation of this duty. However, Wyoming Criminal Pattern Jury Instruction 8.08B is inaccurate because it is indicated for use when the defendant is the aggressor, but deals with the duty to retreat rather than the duty to withdraw. Instructions relating to the initial aggressor should use the term "withdraw," as explained in Wyoming Criminal Pattern Jury Instruction 8.03A or 8.03B, not the term "retreat."
4. Sudden Heat of Passion
[¶32] Mr. Farrow also contends that the district court erred by failing to instruct the jury that before it could find him guilty of murder, the State had to prove beyond a reasonable doubt that he did not act in a sudden heat of passion. As this issue was not raised before the district court, we review for plain error. Schmuck , ¶ 32, 406 P.3d at 297. The absence of the instruction that Mr. Farrow contends was required is clear in the record. The failure to instruct the jury about sudden heat of passion in an appropriate case is also contrary to our decisions in Schmuck , ¶ 28, 406 P.3d at 295, and Shull v. State , 2017 WY 14, 388 P.3d 763 (Wyo. 2017), overruled in part by Schmuck , ¶ 31, 406 P.3d at 297.
[¶33] However, Mr. Farrow was tried in September of 2016. Shull and Schmuck were *820 not decided until 2017. "We have never addressed the issue of whether an alleged error in jury instructions is evaluated at the time of trial or while the appeal is pending." Schmuck , ¶ 34, 406 P.3d at 298 (quoting Miller v. State , 2015 WY 68, ¶ 7, 350 P.3d 264, 266 (Wyo. 2015) ). We have found it unnecessary to resolve that issue because, in each case in which the issue arose, we concluded that the appellant did not satisfy the third prong of the plain error test, that is, a showing that the violation adversely affected a substantial right resulting in material prejudice. E .g ., Schmuck , ¶ 35, 406 P.3d at 298.
[¶34] We are in the same position in Mr. Farrow's case. It is unnecessary for a district court to instruct the jury that the State has the burden of disproving sudden heat of passion if the defendant fails to present evidence to support a finding that the defendant acted in a sudden heat of passion. Schmuck , ¶ 33, 406 P.3d at 298 ("[W]hen a defendant presents some evidence that he acted in a sudden heat of passion, the State has the burden to prove its absence.") (citing Shull , ¶ 34, 388 P.3d at 771 ("If Shull presented some evidence that he acted in a sudden heat of passion, as the district court must have found he did, the jury should have been told that the State had the burden of proving the absence of a sudden heat of passion.") ). Because Mr. Farrow did not satisfy the prerequisite of presenting "some evidence that he acted in a sudden heat of passion," he was not prejudiced by the district court's failure to instruct the jury on the State's burden to disprove that he acted in a sudden heat of passion.
[¶35] The definition of sudden heat of passion is found in Wyoming Criminal Pattern Jury Instruction No. 21.05C:
"Heat of passion" means such passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same or similar circumstances as those in question which would cause him to act rashly, without reflection or deliberation, and from passion rather than from judgment. The heat of passion must be aroused suddenly, and the act resulting in death must occur while the defendant was acting under the direct and immediate influence of such heat of passion, and before sufficient time has elapsed to permit the heat of passion to cool.
[¶36] As evidence that he acted under a sudden heat of passion, Mr. Farrow points out that he and Ms. Lowham were in, or had been in, a romantic relationship, and that they were living together. He and Ms. Lowham went to a bar together that evening, but she left the bar with another man without telling Mr. Farrow. He later found her in bed and intoxicated at the apartment where a party was taking place. He testified that he wanted to take her away from that apartment, but was unable to do that by himself, and was thwarted in his attempts to get help. In particular, his efforts were thwarted by Mr. Hansen, who tried to provoke a fight with Mr. Farrow by insulting him and calling him names. Mr. Farrow indicated that he felt trapped by the situation, "and it was weird to me that this altercation is happening and nobody really cares or is doing anything."
[¶37] These circumstances are insufficient alone to give rise to a duty to instruct on sudden heat of passion. As stated in the pattern jury instruction, heat of passion must be aroused suddenly. Mr. Farrow waited nearly three hours after Ms. Lowham left the bar before going to the apartment to look for her. Mr. Johnson, who left the bar with Mr. Farrow and talked to him about his relationship with Ms. Lowham, believed that Mr. Farrow was "in a pretty good spot emotionally" and that "everything kind of settled down" before they went to the apartment to look for Ms. Lowham.
[¶38] Several witnesses testified that Mr. Hansen confronted Mr. Farrow and tried to spur him into a fight very soon after Mr. Farrow arrived at the apartment. This continued until Mr. Farrow went back to the bedroom to check on Ms. Lowham. When Mr. Farrow returned from the bedroom, Mr. Hansen immediately confronted him again. In response to Mr. Hansen's efforts to start a fight, Mr. Farrow said, "I'm not going to fight. ... I don't have any reason to fight." When Mr. Hansen called him a "bunch of names," Mr. Farrow "was trying to ignore him at that time and turn away from him."
*821 [¶39] When someone suggested playing beer pong, Mr. Farrow agreed, because "if a game of beer pong will settle it, [he would] play a game of beer pong." When Mr. Hansen declared, "Well, one way or the other, I'm fucking you up," Mr. Farrow decided:
I'm done with this and at this point in time I realized the situation wasn't getting better. It wasn't going to get better. And so I was like, I'm done with this. And I turned around and as I turned around, I heard him say, "That's what I thought, bitch." And then I took a step or two and I got struck - I - I was walking back that way and I got struck in the back really hard.
When struck with this blow, Mr. Farrow felt sharp pain, had difficulty breathing, and felt back spasms. He testified that when he got struck again, he "was in a lot of pain and in fear for my well-being and that's when I drew the gun."
[¶40] Mr. Farrow's testimony does not suggest that he reacted to Mr. Hansen's provocations in a sudden heat of passion. It indicates, rather, that he acted out of pain and fear, and thus in self-defense. Because Mr. Farrow failed to present evidence that he acted in a sudden heat of passion - either as to Ms. Lowham or as to Mr. Hansen - the district court was not required to instruct the jury that the State had the burden of disproving that he acted in a sudden heat of passion. The district court's failure to do so did not work to Mr. Farrow's material prejudice, and Mr. Farrow has failed to demonstrate plain error.
5. Definition of "Maliciously"
[¶41] The district court instructed the jury that if it did not find him guilty of first-degree murder, it could still convict him of the lesser included offenses of second-degree murder or manslaughter. It instructed the jury that the elements of the crime of second-degree murder were:
1. On or about the 21st day of December 2014
2. In Lincoln County, Wyoming
3. The Defendant, Wade Richard Farrow
4. Purposely and
5. Maliciously
6. Killed Tony Hansen.
[¶42] In Instruction No. 31, the district court defined "maliciously" as follows:
The term "maliciously" means that the act constituting the offense was done intentionally but without premeditation, was reasonably likely to result in death and was done without legal justification or excuse or recklessly under circumstances manifesting an extreme indifference to the value of human life and was done without legal justification or excuse.
Because the parties disagreed about this instruction and the district court spent substantial time and effort considering it, we review for abuse of discretion.
[¶43] Mr. Farrow contends that this instruction was in error, and the State concedes that it was improper. We agree. We rejected an identically-worded instruction in Widdison , explaining that the instruction at issue
provides two correct statements of the law relating to second-degree murder-it provides the correct definition of maliciously and states that the act constituting the offense must be done intentionally but without premeditation. See Wyo. Stat. Ann. § 6-2-104 (LexisNexis 2017) (whoever "purposely and maliciously, but without premeditation, kills any human being is guilty" of second-degree murder). However, by joining those two statements by the disjunctive "or," the instruction incorrectly gave the jury a choice between two definitions of malice, one of which omitted the necessary concept of reckless indifference. We agree with the State that this violated the clear and unequivocal rule of law set forth in Wilkerson .
Widdison , ¶ 41, 410 P.3d at 1218. The reference in that quotation is to Wilkerson v. State , 2014 WY 136, 336 P.3d 1188 (Wyo. 2014), in which we ruled that "the jury must be instructed that 'malice' means that the act constituting the offense was done recklessly under circumstances manifesting an extreme indifference to the value of human life, and that the act was done without legal justification or excuse." Id. ¶ 27, 336 P.3d at 1200 *822 (emphasis in original). The definition of "maliciously" given to the jury in Mr. Farrow's case was incorrect and contrary to the rule of law set forth in Wilkerson and Widdison .
[¶44] That does not end our inquiry, because even if an instruction is given in error, that instruction must be prejudicial to constitute reversible error. Stocki v. Nunn , 2015 WY 75, ¶ 21, 351 P.3d 911, 917-18 (Wyo. 2015) (quoting Brown v. State , 2015 WY 4, ¶ 40, 340 P.3d 1020, 1031 (Wyo. 2015) ).
"To establish prejudice, the appellant must show a reasonable probability that [he] would have received a more favorable verdict in the absence of the error." [ Snow v. State , 2009 WY 117, ¶ 34, 216 P.3d 505, 516-17 (Wyo. 2009) ] (quoting Pendleton v. State , 2008 WY 36, ¶ 11, 180 P.3d 212, 216 (Wyo. 2008) ). "In other words, focusing solely on an outcome determination is insufficient; the Court must also look at whether the result of the proceeding was fundamentally unfair or unreliable." Id. (internal quotation marks omitted).
Haire v. State , 2017 WY 48, ¶ 38, 393 P.3d 1304, 1314 (Wyo. 2017). Significantly, although Mr. Farrow argues that there are "numerous problems with this instruction," he doesn't suggest how these problems worked to his prejudice.
[¶45] The jury in Mr. Farrow's case should have been instructed that "maliciously" means that "the act constituting the offense was done recklessly under circumstances manifesting an extreme indifference to the value of human life, and that the act was done without legal justification or excuse." Wilkerson , ¶ 27, 336 P.3d at 1200. The jury's rejection of Mr. Farrow's self-defense claim leaves no doubt that it found no legal justification or excuse for Mr. Farrow's actions. Based on the evidence of record, we have no doubt that it also found that Mr. Farrow acted recklessly under circumstances manifesting an extreme indifference to the value of human life.
[¶46] In Johnson v. State , 2015 WY 118, 356 P.3d 767 (Wyo. 2015), we upheld Mr. Johnson's attempted first-degree murder conviction "because whether or not the malice instruction given in his case violated clearly established law, Mr. Johnson cannot show that he was materially prejudiced."[1] Id. ¶ 21, 356 P.3d at 773. We concluded that Mr. Johnson was not materially prejudiced because "[t]he evidence presented was more than sufficient to persuade a reasonable jury that Mr. Johnson acted with the intent to kill, without legal justification or excuse, and in a manner indicating hatred, ill will or hostility." Id . ¶ 24, 356 P.3d at 773.
[¶47] The State presented evidence in Johnson that he went to the victim's apartment and attacked him with a knife, stabbing him repeatedly in the chest, stomach, groin, and arms, inflicting wounds that were severe and life-threatening. He tried to cut the victim's throat. The State called a witness who testified that Mr. Johnson said he intended to kill the victim because he was a child molester. "Considering this evidence, we conclude[d] no reasonable probability existed that the verdict would have been more favorable to Mr. Johnson but for the challenged instruction." Id . ¶¶ 22-24, 356 P.3d at 773.
[¶48] We similarly conclude that the evidence in Mr. Farrow's case leaves no reasonable probability that the verdict would have been more favorable to Mr. Farrow without the erroneous definition of "maliciously." Several eye-witnesses to the shooting testified that Mr. Hansen fell flat on his back and stopped moving after being hit by Mr. Farrow's first shot. However, Mr. Farrow did not stop shooting. Instead, he positioned himself "straight over the top" of Mr. Hansen, steadied both hands on the pistol, and fired the remaining six rounds into his body. Eye-witness accounts to this effect were corroborated by evidence that there were bullet holes in the rugs and floor onto which Mr. Hansen fell after the first shot. One spent bullet was found under the rug and on top of *823 the carpeting, and another embedded in the carpet. A third spent bullet went through both the rugs and the carpeting and was embedded in the floor below.
[¶49] This evidence was more than sufficient for a reasonable jury to find that Mr. Farrow acted "recklessly under circumstances manifesting an extreme indifference to the value of human life." Wilkerson , ¶ 27, 336 P.3d at 1200. In addition, as indicated above, the jury rejected Mr. Farrow's self-defense claim, indicating that it found no legal justification or excuse for Mr. Farrow's actions. Accordingly, while the jury was given an incorrect definition of "maliciously," Mr. Farrow cannot show he was prejudiced by the error because the evidence of record convincingly establishes that Mr. Farrow's actions satisfied both prongs of the correct definition of "maliciously." The instructional error is therefore not reversible error.
B. Exclusion of testimony of specific instances of conduct relating to the victim's character for violence
[¶50] At trial, Mr. Farrow called Perfecto Sandoval as a witness. The prosecution objected that the testimony would be inadmissible hearsay, based on its understanding that Mr. Sandoval would testify that he heard Mr. Hansen say he was seeking a fight on the night of the incident. It moved for an offer of proof from Mr. Farrow so that the district court could determine the admissibility of the proposed testimony.
[¶51] Defense counsel represented that Mr. Sandoval would testify
that he spoke with Tony Hansen the day of the incident. He will testify that Mr. Hansen told him that he ... was looking to get into a fight. He was - he will testify that Mr. Hansen was well known for fighting and that he often exhibited violent behavior towards others.
The district court ruled that Mr. Sandoval could testify "about his knowledge of the reputation of Mr. Hansen," but could not testify "concerning any statements or anything that Mr. Sandoval had with Mr. Hansen concerning any fights." Noting that the "gravamen" of Mr. Sandoval's testimony was about Mr. Hansen's statements, defense counsel decided not to call Mr. Sandoval as a witness.
[¶52] Mr. Farrow asserts that the district court erred in excluding Mr. Sandoval's testimony about Mr. Hansen's statement that he wanted to get into a fight. We review this evidentiary ruling for an abuse of discretion. Hannon v. State , 2004 WY 8, ¶ 13, 84 P.3d 320, 328 (Wyo. 2004). We afford considerable deference to a trial court's rulings on the admissibility of evidence, and we will not disturb the trial court's ruling if there is a legitimate basis for it. CL v. ML , 2015 WY 80, ¶ 15, 351 P.3d 272, 277 (Wyo. 2015). Even if we find an abuse of discretion in an evidentiary ruling, that constitutes reversible error only if it was prejudicial. Garriott , ¶ 20, 408 P.3d at 780. An error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made. Id . Mr. Farrow further contends that the district court's ruling denied him of his constitutional right to present a complete defense. We review this constitutional issue de novo. Hannon , ¶ 13, 84 P.3d at 328.
[¶53] On appeal, Mr. Farrow contends that W.R.E. 405(b) explicitly allows a defendant to present evidence of specific instances of the victim's conduct to show that the victim was the first aggressor. W.R.E. 405(b) provides that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or is in issue under Rule 404(a)(2), proof may also be made of specific instances of his conduct." On this basis, Mr. Farrow claims that the district court erred in excluding Mr. Sandoval's testimony about Mr. Hansen's statement.
[¶54] W.R.E. 405(b) allows evidence of "specific instances of ... conduct." We question whether Mr. Hansen's statement was "conduct" meant to be covered by this rule. However, because we decide this issue on other grounds, we need not answer that question here.
[¶55] The State counters that Mr. Sandoval's testimony about Mr. Hansen's statement was properly excluded as hearsay. W.R.E. 802 provides that hearsay evidence is *824 generally inadmissible. However, W.R.E. 803(3) provides a potentially applicable exception, allowing the admission of hearsay if it is a statement "of the declarant's then-existing state of mind, emotion, sensation, or physical condition." Again, because we decide this issue on other grounds, we need not decide if this hearsay exception applies to Mr. Sandoval's testimony.
[¶56] Further, we do not need to decide whether the district court's ruling was an abuse of discretion. An erroneous evidentiary ruling is reversible error only if it was prejudicial. Garriott , ¶ 20, 408 P.3d at 780. The record in this case makes clear that Mr. Farrow suffered no prejudice from the district court's decision to exclude Mr. Sandoval's testimony about Mr. Hansen's statement that he wanted to get into a fight.
[¶57] Four witnesses at Mr. Farrow's trial testified that Mr. Hansen tried to goad Mr. Farrow into a fight. Given this evidence, Mr. Sandoval's testimony that Mr. Hansen said he wanted to get into a fight was not only cumulative, but also more remote in time from the confrontation between Mr. Farrow and Mr. Hansen than the eye-witness accounts. There is no reasonable probability that the verdict would have been more favorable to Mr. Farrow if the district court had allowed Mr. Sandoval's testimony. Mr. Farrow has not demonstrated that the district court's evidentiary ruling constituted reversible error.
[¶58] This conclusion is fatal to Mr. Farrow's constitutional claim. "The United States Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Bush v. State , 2008 WY 108, ¶ 59, 193 P.3d 203, 217 (Wyo. 2008) (citing Crane v. Kentucky , 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) ). However, a trial court does not violate a defendant's constitutional right to present a complete defense if its exclusion of evidence does not prejudice him. See Toth v. State , 2015 WY 86A, ¶ 43, 353 P.3d 696, 709-10 (Wyo. 2015).
C. Prosecutorial misconduct
[¶59] Mr. Farrow's next claim is that he was prejudiced by prosecutorial misconduct when the prosecutors misrepresented Wyoming law on self-defense. Mr. Farrow did not object to the prosecutors' remarks during trial, and accordingly, we review for plain error. Brown v. State , 2014 WY 104, ¶ 19, 332 P.3d 1168, 1174-75 (Wyo. 2014) ; Barela v. State , 787 P.2d 82, 83 (Wyo. 1990). Again, in order for an appellant to establish plain error, the record must clearly reflect the alleged error, the appellant must demonstrate a violation of a clear and unequivocal rule of law, and the appellant must prove that the violation adversely affected a substantial right resulting in material prejudice. Garriott , ¶ 21, 408 P.3d at 780.
[¶60] Mr. Farrow's assertion of prosecutorial misconduct is two-phased. He first claims in a very specific argument that the prosecutors incorrectly told the jury that he had the burden of proof as to certain aspects of his self-defense claim. He claims secondly in a less focused argument that the prosecution "informed the jury that it must hold the fact that Mr. Farrow went to the party after having armed himself, and then failed to leave the party prior to the escalation of physical violence against Mr. Farrow's claim of self-defense, in contradiction of Wyoming law."
[¶61] In the first phase of his prosecutorial misconduct claim, Mr. Farrow objects to the prosecutor's statement concerning self-defense in closing argument that: "Now, let me talk a little bit about self-defense. ... We have to show that it was done - the act was done without legal justification or excuse. Mr. Farrow has to show that he didn't have any other options." He also objects to the prosecution's statement in rebuttal that "Mr. Farrow has to prove that he's in fear for his life before he resorts to deadly force."
[¶62] The prosecutors' statements are plainly misstatements of Wyoming law. Mr. Farrow did not bear any burdens of proof. "The defendant has an initial burden of making a prima facie case that he acted in self-defense; however, once that minimal burden is satisfied, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense."
*825 Drennen , ¶ 22, 311 P.3d at 125. Indeed, it is a "basic premise in our criminal law ... that the burden of proof rests upon the State and never shifts." Rodriguez v. State , 2010 WY 170, ¶ 11, 245 P.3d 818, 822 (Wyo. 2010) (quoting Harper v. State , 970 P.2d 400, 405 (Wyo. 1998) ). Contrary to the prosecutors' statements, Mr. Farrow did not have to show that he had no other options, and he did not have to prove that he was in fear for his life to justify acting in self-defense. The error Mr. Farrow alleges is clearly reflected in the record, and we agree with him that the prosecutors' statements violated a clear and unequivocal rule of law.
[¶63] We turn then to the third question under plain error: whether Mr. Farrow has proven that he was materially prejudiced by this violation.
"To establish prejudice, the appellant must show a reasonable probability that [he] would have received a more favorable verdict in the absence of the error." [ Snow v. State , 2009 WY 117, ¶ 34, 216 P.3d 505, 516-17 (Wyo. 2009) ] (quoting Pendleton v. State , 2008 WY 36, ¶ 11, 180 P.3d 212, 216 (Wyo. 2008) ). "In other words, focusing solely on an outcome determination is insufficient; the Court must also look at whether the result of the proceeding was fundamentally unfair or unreliable." Id. (internal quotation marks omitted).
Haire , ¶ 38, 393 P.3d at 1314.
[¶64] The prosecutors' remarks about burdens of proof were brief and fleeting. Moreover, the jury was correctly informed numerous times about the correct burdens of proof. For example, in his opening statement, defense counsel articulated the correct burden of proof: "The State has a heavy burden in this case to show that [Mr. Farrow] didn't act in self-defense. That's the burden - that's one of their burdens of proof. They have to show that Mr. Farrow did not act in self-defense." The district court, in Instruction No. 18, instructed the jury on the correct burden of proof: "Before the defendant may be convicted of any crime, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense." We presume that the jury followed its instructions. Guy v. State , 2008 WY 56, ¶ 19, 184 P.3d 687, 694 (Wyo. 2008). The misstatements were a small part of an otherwise lengthy trial and closing argument, and the prosecutor did not argue that the jury should reject Mr. Farrow's defense of self-defense because he failed to carry his nonexistent burden. See Mazurek v. State , 10 P.3d 531, 539 (Wyo. 2000) (one of the factors to consider in weighing prejudice is "whether the remarks were isolated or extensive"). Rather, the State focused its argument on why his self-defense claim failed: because there were reasonable alternatives available to Mr. Farrow. Finally, the jury was confronted with a situation where the victim, who was approximately six inches shorter and forty pounds lighter than Mr. Farrow, used his fists and Mr. Farrow responded with a gun. On this record, there is no reasonable probability that the jury would have reached a verdict more favorable to Mr. Farrow if the prosecutors had not made the two mistaken statements.[2]
[¶65] Further, in defense counsel's closing argument, he pointed out the prosecutors had "misrepresented" the law on burdens of proof:
[The prosecutor] also misrepresented some things about - and this is just - this is - and again, I hadn't even planned to talk about this. I was shocked to hear that he said this. ... He said that Mr. Farrow must prove that he had options, that he must prove that he had alternatives. Mr. Farrow doesn't have to prove anything. ...
*826 [The prosecutor] kept saying, "Mr. Farrow must show this. Mr. Farrow must show that." He doesn't have to show a thing. And that's what this instruction is about. No. 18, ... before the Defendant may be convicted of any crime the State must prove beyond a reasonable doubt that the Defendant did not act in self-defense. That's their burden. It's a heavy - it's the heaviest burden in the law.
Defense counsel was able to discredit the prosecution's case by attacking the prosecutors' misstatements. Arguably, this worked to Mr. Farrow's advantage, not to his material prejudice. See Mazurek , 10 P.3d at 539 (considering "whether the failure to object could have been the result of tactical decisions"). Accordingly, we conclude that Mr. Farrow has not shown material prejudice, and so has failed to establish plain error.
[¶66] In the second phase of his prosecutorial misconduct claim, Mr. Farrow asserts in his brief that the "law in Wyoming is clear" that
a defendant does not need to curtail his activity or leave a place he has a legal right to be, in response to a bully or being bullied in order to avail himself of the right to self-defense. The fact that the defendant did not flea [sic] or cower in the face of being threatened is irrelevant when weighing his right to self-defense.
To support his assertion, he relies on State v. Bristol , 53 Wyo. 304, 84 P.2d 757 (1938). In that case, the defendant had helped eject the intoxicated victim from a liquor store and cocktail lounge. The victim later returned and proceeded to abuse the defendant verbally, threatening to "stomp his face in" when the defendant left the premises. Id . at 312, 84 P.2d at 758-59. The defendant took a gun with him when he left the premises and went to a café. Although the defendant claims to have been unaware of this, the victim was in the same café. Id . at 313, 84 P.2d at 759. The victim physically attacked the defendant, who shot him. Id . at 315, 84 P.2d at 760.
[¶67] The State claimed that the defendant was the aggressor because he armed himself and went to where the victim was. Id . at 318, 84 P.2d at 761. We rejected that claim. We said that the café was a public place and that it was not an "unlawful or wrongful act for the defendant to go there." Id . at 320, 84 P.2d at 762. Because the defendant had a right to be at the café, he also had the right to stay there despite the presence of the victim. Id . at 323, 84 P.2d at 763. In sum, "neither the fact of arming himself, nor the fact of going to the [café], even if he knew that the deceased was there, was sufficient to deprive the defendant of the right of self-defense." Id. at 327-28, 84 P.2d at 765.
[¶68] Mr. Farrow asserts that statements by the prosecution during closing argument improperly asserted that he was not entitled to remain at the party with Mr. Hansen in the face of Mr. Hansen's verbal abuse and attempts to provoke Mr. Farrow into a fight. His brief does not clearly specify what prosecutor's statement was objectionable, but we think it was this:
[I]f you find that Mr. Farrow was the aggressor, he had the duty to retreat before using deadly force. He told you he chose not to leave because he didn't want to leave without his fiancée, his girlfriend, or ex-girlfriend, if you believe her testimony. He didn't try to run or otherwise escape before pulling the gun. Eyewitnesses told you that no one was blocking the exit. The escape was available. Not only did he choose not to leave, he was invited to leave by Mr. Hansen and he passed up his golden ticket to get out of this hostile, claustrophobic, small, confined space with people who didn't want him there. He declined. He chose to stay. Why? Because he knew he had a gun. He told you he couldn't leave because he would have had to have turned his back on Tony Hansen but then he turns his back on Tony Hansen and Tony Hansen hit him. So then why not leave? Why not take that opportunity?
[¶69] The prosecutor's statements are entirely consistent with our earlier discussion establishing that a defendant must consider "reasonable alternatives prior to using deadly force, one of which may be retreat or escape." Drennen , ¶ 29, 311 P.3d at 126-27. The prosecutor was using the evidence to argue to the jury that Mr. Farrow had options other than resorting to deadly force.
*827 Because the prosecution had the burden of showing that Mr. Farrow did not act in self-defense, Drennen , ¶ 22, 311 P.3d at 124-25, it was not improper for the prosecutor to discuss Mr. Farrow's other alternatives.
[¶70] It may be, as Mr. Farrow contends, that he had the right to be in the apartment, and the right to remain there despite Mr. Hansen's taunts and threats. However, those rights are limited by the duty to take advantage of other alternatives, including withdrawal or retreat,[3] before resorting to deadly force. We cannot conclude that these statements by the prosecutor violated a clear and unequivocal rule of law.
D. Ineffective assistance of counsel
[¶71] Following his trial and sentencing, Mr. Farrow filed a motion for a new trial pursuant to W.R.A.P. 21, asserting ineffective assistance of his counsel at trial. After holding an evidentiary hearing on the motion, the district court denied it. Mr. Farrow appeals that decision, again asserting ineffective assistance of trial counsel.
[¶72] Our analysis of a claim of ineffective assistance of counsel follows a familiar path:
An appeal of an ineffective assistance of counsel ruling presents mixed questions of law and fact. Miller v. State , 2018 WY 102, ¶ 13, 424 P.3d 1284, 1287 (Wyo. 2018) (quoting Worley v. State , 2017 WY 3, ¶ 9, 386 P.3d 765, 769 (Wyo. 2017) ). We review the district court's conclusions of law de novo and defer to its factual findings unless they are clearly erroneous. Id. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Miller , ¶ 13, 424 P.3d at 1287 (quoting Cowboy's LLC v. Schumacher , 2018 WY 61, ¶ 10, 419 P.3d 498, 501 (Wyo. 2018) ).
To prevail on an ineffective assistance claim, a defendant must show that his trial counsel rendered constitutionally deficient performance and that absent that deficiency, a reasonable probability exists that he would have enjoyed a more favorable verdict. Larkins v. State , 2018 WY 122, ¶ 62, 429 P.3d 28, 43 (Wyo. 2018) (citing Strickland v. Washington , 466 U.S. 668, 687, 695, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984) ).
To show that trial counsel's performance was constitutionally inadequate, the defendant must demonstrate that the attorney's performance was substantially below that of a reasonably competent attorney. Bruckner v. State , 2018 WY 51, ¶ 15, 417 P.3d 178, 181-82 (Wyo. 2018). We "evaluate[ ] counsel under the circumstances existing at the time of the challenged act or omission and from the perspective available at the time of the challenged act or omission." Id. at ¶ 15, 417 P.3d at 181.
Wall v. State , 2019 WY 2, ¶¶ 38-39, 432 P.3d 516, 527 (Wyo. 2019).
[¶73] Mr. Farrow asserts three different types of ineffective assistance. Although his first claim is difficult to ascertain from his brief, his memorandum filed in the district court characterized it as a failure to review and become familiar with discovery. He contends that while the State consistently informed the jury that there was no evidence to support Mr. Farrow's version of the events, there was actually "an ample amount of the State's own evidence which supported Mr. Farrow's case and directly contradicted the State's assertion." He suggests the following evidence:
Most importantly, there was evidence on bullet trajectory which directly disputed the State's theory that Mr. Hansen was laying [sic] prone on the ground when he was shot by Mr. Farrow. And there was also evidence of at least one and possibly more bullets striking the wall, and not solely on the floor as alluded to by the State. This evidence was never mentioned and never even addressed by defense counsel.
*828 [¶74] Mr. Farrow does not specify the evidence to which he refers with any citations to the record. He fails to address the district court's specific findings of fact that, contrary to his claim of failure to review discovery, trial counsel reviewed the State's discovery materials himself, with co-counsel, and with Mr. Farrow. We generally decline to consider issues not supported by cogent argument and authoritative citation. Snyder v. State , 2015 WY 91, ¶ 15 n.1, 353 P.3d 693, 695-96 n.1 (Wyo. 2015). On this basis, we decline further consideration of Mr. Farrow's first claim of ineffective assistance of counsel.
[¶75] Mr. Farrow's second claim is more specific. He claims that "a reasonably competent attorney would have consulted and obtained an expert who could testify regarding shooting in stressful situations." His argument on this point fails to produce any support for his claim.
[¶76] "When an ineffectiveness claim rests on the failure to call an expert witness, the defendant must show that one was available to testify in a manner consistent with his theory of the case." Jones v. State , 2017 WY 44, ¶ 16, 393 P.3d 1257, 1262 (Wyo. 2017) (citing Griggs v. State , 2016 WY 16, ¶ 38, 367 P.3d 1108, 1124 (Wyo. 2016) ). In the Rule 21 hearing, Mr. Farrow presented an expert witness who testified about crime scene reconstruction and bullet trajectories. This expert provided no testimony about shooting in stressful situations. Mr. Farrow thus failed to show that an expert witness was available to testify about shooting in stressful situations.
[¶77] Mr. Farrow points out that his trial counsel had designated a "self-defense expert" who would testify at trial that "self-defense was justified in this situation." In response to the prosecution's motion to exclude this expert's testimony, the district court ruled that the expert could testify about the facts of the case, but could not testify
about whether any actions of Mr. Farrow were or were not justified; whether there is anything concerning the definition of excessive force and a reasonable person; and he is also barred from testifying about the state of mind of Mr. Farrow. The witness ... is also barred from testifying on the issue of whether or not he had an idea of whether his shots hit the victim or not and whether they were killing shots or not.
The district court explained that, based on Armstrong v. State , 826 P.2d 1106 (Wyo. 1992), the barred testimony addressed "ultimate issues that should be determined by the jury." Because of the district court's limitations on this expert's testimony, trial counsel chose not to call him as a witness.
[¶78] On appeal, Mr. Farrow asserts that trial counsel testified at the Rule 21 hearing that this expert could have testified about shooting in stressful situations. Although Mr. Farrow does not present any argument to this effect, it is possible to read his assertion as one that an expert was available to testify consistently with his theory of the case. However, he does not challenge the district court's decision to limit the testimony of this expert. He does not challenge trial counsel's decision not to call this witness to testify at trial.
[¶79] Given the state of the record in this case, such a contention would be difficult to sustain. Even if an expert witness were available, "the defendant must also show that counsel's decision regarding the use of an expert reflected incompetency rather than a reasonable tactical choice." Jones , ¶ 16, 393 P.3d at 1262. Trial counsel for Mr. Farrow testified at the Rule 21 hearing that he "thought we had a good enough record at that point" so that it was unnecessary to call this expert witness or to engage another. "Judicial scrutiny of counsel's performance must be highly deferential." Calene v. State , 846 P.2d 679, 691 (Wyo. 1993) (quoting Strickland , 466 U.S. at 689, 104 S.Ct. at 2065.) We must defer to trial counsel's tactical choice and conclude that Mr. Farrow has not demonstrated that trial counsel rendered ineffective assistance of counsel by choosing not to call a witness to testify about shooting in stressful situations.
[¶80] Third, Mr. Farrow claims that trial counsel "failed to cross-examine two of the State's witnesses in any meaningful way." The first such was the State's pathologist who had prepared the autopsy report on Mr. *829 Hansen. This report indicated that Mr. Hansen suffered seven gunshot wounds, and further indicated the directions of the rounds inflicting these wounds. Mr. Farrow contends that this evidence was contrary to the State's theory that Mr. Hansen was lying on the floor when Mr. Farrow shot him. He claims that trial counsel failed to question the pathologist about this contradictory evidence.
[¶81] At the Rule 21 hearing, trial counsel identified the reason that he did not ask such questions of the State's pathologist: he "wanted [this witness] off the stand as quickly as possible."
He was the nicest, old man in the world. I wanted him off the stand. All he did was hurt [the defense case]. I wanted to see him go away. Have you ever tried a case? Have you ever had to make that decision?
[¶82] "Cross-examination technique is an aspect of trial strategy which is best left to the trial attorney rather than to the supervision of appellate courts." Mraz v. State , 2016 WY 85, ¶ 48, 378 P.3d 280, 292 (Wyo. 2016) (quoting Hamburg v. State , 820 P.2d 523, 528 (Wyo. 1991) ). Mr. Farrow's assertion that the cross-examination should have been more thorough is insufficient to overcome trial counsel's specific explanation of his strategy for limiting his cross-examination of the State's pathologist. "Speculation as to how the cross-examination could have been conducted differently does not meet the Strickland test for ineffective assistance." Barkell v. State , 2002 WY 153, ¶ 23, 55 P.3d 1239, 1244 (Wyo. 2002). Mr. Farrow has failed to demonstrate that trial counsel's strategy amounted to ineffective assistance of counsel.
[¶83] Next, Mr. Farrow contends that trial counsel inadequately cross-examined the detective who testified about finding spent bullets in the rug, carpet, and floor where Mr. Hansen's body came to rest. He also testified that he found no bullets in the walls in the hallway. Mr. Farrow claims, however, that there was evidence of a bullet hole in the closet door behind or to the side of Mr. Hansen. He contends that trial counsel rendered ineffective assistance by failing to cross-examine the detective about this contrary evidence.
[¶84] Again, trial counsel's testimony at the Rule 21 hearing explained why he did not cross-examine the detective about this evidence. The location of the bullets "wasn't the focus of the case for me." Further, the testimony of the detective "hurt us" by reinforcing the State's theory that Mr. Farrow had fired down at Mr. Hansen while he was lying on the floor. Under these circumstances, trial counsel felt that limited cross-examination was appropriate because he was a neutral witness and he had little or no way to impeach him. "You know, sometimes limited cross-examination ... sit down and shut up. They taught me that in law school."
[¶85] Again, "[c]ross-examination technique is an aspect of trial strategy which is best left to the trial attorney rather than to the supervision of appellate courts." Mraz , ¶ 48, 378 P.3d at 292. Mr. Farrow's claim of ineffective assistance of counsel is untenable in light of trial counsel's explanation of his decision to limit his cross-examination of the detective. In this claim, as in his others, Mr. Farrow has failed to prove ineffective assistance of counsel.
CONCLUSION
[¶86] We have determined that the district court did not err in instructing the jury, or that where it did err, the error was not prejudicial to Mr. Farrow. We have concluded that the district court properly excluded testimony that Mr. Hansen made previous statements indicating that he wanted to get into a fight. We have concluded that, although the prosecutor did commit misconduct by suggesting that Mr. Farrow had the burden of proof on certain issues relating to his claim of self-defense, there is no reasonable probability that the verdict would have been more favorable to Mr. Farrow absent this misconduct. Finally, we confirm the district court's decision that Mr. Farrow's trial counsel did not provide ineffective assistance. We therefore affirm Mr. Farrow's conviction and sentence.

We recognize that the definition of "maliciously" for purposes of first-degree murder, as in Johnson , is somewhat different from the definition of "maliciously" for purposes of second-degree murder, as in Mr. Farrow's case. However, the question in both cases is whether the defendant was materially prejudiced when the jury was given an incorrect definition of the term "maliciously."

We are also reluctant to find plain error within closing argument "lest the trial court becomes required to control argument because opposing counsel does not object." Trujillo v. State, 2002 WY 51, ¶ 4, 44 P.3d 22, 24 (Wyo. 2002) (citation omitted). The proper avenue to correct the State's misstatements is to object and have the court issue a curative instruction. See Dice v. State , 825 P.2d 379, 384 (Wyo. 1992) ("The first responsibility for the deterrence of contended improper conduct by the prosecution belongs to appellant's trial counsel. The prompt objection to misconduct allows the trial court to weigh the impact of the comments and assess curative measures."). As discussed in ¶ 65 infra , defense counsel clearly and correctly recognized the State's misstatements in his closing argument.

There is an exception to this rule. "[A] person is not required to retreat and may stand his ground and kill his assailant if he is assaulted, without fault, in his own home." Drennen , ¶ 24, 311 P.3d at 125.